### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | **Case No. 16-42357-can9** |
| **Lake Lotawana Community Improvement** | ) | |
| **District,** | ) | |
| Debtor. | ) | **Chapter 9** |

## OPINION AND ORDER DENYING MOVANTS' MOTION TO COMPEL DISCOVERY OF MEDIATION STATEMENT

Must a Chapter 9 debtor produce a prepetition mediation statement so that its creditor may ascertain whether the debtor mediated in good faith and is thus eligible to file Chapter 9 under 11 U.S.C. § 109(c)(5)(B)? Under the facts of this case, the court concludes that the mediation statement is privileged and need not be produced.[1]

### I.      Background

On August 26, 2016, the Lake Lotawana Community Improvement District ("the District") filed for Chapter 9 relief.[2] Prior to filing, the District and MI Bondholders, LLC (the "Bondholders"), engaged in mediation, attempting to negotiate the terms of repayment of matured bonds owed by the District. As part of the mediation, the mediator requested each party provide the mediator with a confidential mediation statement to educate the mediator about the case and the parties' respective positions.[3] The mediation was unsuccessful and the District subsequently filed for relief under Chapter 9.

---

[1] No party contests jurisdiction or that the matter is core. 28 U.S.C. § 1334(a); 28 U.S.C. §§ 157(a) and 157(b)(2)(A).

[2] This is the District's second Chapter 9 filing in the W.D. of Missouri. See Case No. 10-44629.

[3] Per the Mediation Letter from the mediator: "I have no information about this dispute. You should therefore forward to me copies of pleadings, contracts and subcontracts, correspondence and any other documentation you believe appropriate for me to review prior to the mediation." Exhibit A to Motion to Compel at 2, Dk 52-1.

Shortly after the District filed for relief, the Bondholders and Wells Fargo Bank, N.A., as Trustee, (collectively, the "Movants") sought production of the District's mediation statement (the "Statement")[4] to determine whether the District was an eligible debtor under Chapter 9.[5] The District refused. After the parties agreed[6] to dispense with the requirements of formal discovery requests, the Movants filed a Motion to Compel Production of Mediation Statement (the "Motion to Compel"). *See* Dk 52. The District timely filed an Objection to Movant's Motion to Compel Production of Mediation Statement (the "Objection"), *see* Dk 59, and filed a Motion to File a Document under Seal for In Camera Review of the Confidential Mediation Statement, *see* Dk 60. The Movants timely filed Reply Suggestions in Support of the Motion to Compel Production of Statement (the "Reply"). *See* Dk 63. Neither party requested an evidentiary hearing on this matter. This matter is fully briefed and ready for decision.

---

[4] Originally, the Movants informally sought production of the Statement via email. *See* Exhibit B to Movants' Motion to Compel, Dk 52-2. The Movants then sought production of the Statement in the Movants' Motion for Relief from Stay, Dk 32.

[5] An entity may be a debtor under chapter 9 of this title if and only if such entity–
    (1) is a municipality;
    (2) is specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter;
    (3) is insolvent;
    (4) desires to effect a plan to adjust such debts; and
    (5)(A) has obtained the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
        (B) has negotiated in good faith with creditors and has failed to obtain the agreement of creditors holding at least a majority in amount of the claims of each class that such entity intends to impair under a plan in a case under such chapter;
        (C) is unable to negotiate with creditors because such negotiation is impracticable; or
        (D) reasonably believes that a creditor may attempt to obtain a transfer that is avoidable under section 547 of this title.
11 U.S.C. § 109(c).

[6] At a status hearing held on October 25, 2016, the parties consented to dispense with the requirement of Movants' formal request for production and the District's response before filing a motion to compel. *See* FED. R. CIV. P. 37, made applicable by FED. R. BANKR. P. 7037.

## II.     Discussion

The Movants make the following arguments in support of the Motion to Compel: (1) the Statement is not protected by Federal Rule of Evidence 408; (2) the parties did not agree in the mediation that the Statement was exempt from production in this bankruptcy case; (3) mediation statements are admitted in many and varied circumstances; (4) the Statement is not privileged; (5) in bad faith litigation, these types of documents must be produced; and (6) the "sword and shield" doctrine operates to permit discovery of the Statement. The first three arguments are essentially admissibility arguments, and thus, are irrelevant in the context of this Motion to Compel.[7]   The latter three arguments can be summarized as follows: the Statement is not privileged, and even if it was privileged, 11 U.S.C. § 109(c)(5)(B) repeals any privilege that may apply and, in the alternative, the District waived its privilege.

Pursuant to Federal Rule of Civil Procedure 26(b)(1),[8] "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1); *see also Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 344 (8th Cir. 2012) ("Under the Federal Rules, any unprivileged matter that is relevant to a party's claim or defense is generally discoverable."). But the right to discovery is not absolute.

In this case, the District argues the Statement is privileged.[9] Under Federal Rule of Evidence 501, "[t]he common law—as interpreted by United States courts in the light of reason

---

[7] In this context, the Motion to Compel addresses the production and discoverability of evidence between the parties, as opposed to the admissibility of evidence before the trier of fact.

[8] Federal Rule of Bankruptcy Procedure 9014 makes this a contested matter in which Federal Rule of Civil Procedure 26 applies, as incorporated by Federal Rule of Bankruptcy Procedure 7026.

[9] The District also argues that the terms of the Mediation Letter provide that the Statement is confidential. The court need not address this argument as confidentiality does not equate to a privilege. Confidential information may still be discoverable. This is contemplated by the Mediation Letter, which states "[n]o admission, statement or representation made in the

3

and experience—governs a claim of privilege." The federal common law governs privileges where a claim or defense is based on a federal rule of decision. *See In re Stockton*, 475 B.R. 720, 728–29 (Bankr. E.D. Cal. 2012) ("The rules on privilege apply to all stages of [a] chapter 9 case."). At issue here is the District's eligibility under 11 U.S.C. § 109,[10] specifically, whether the District negotiated in good faith with the Movants prior to filing for relief. *See* 11 U.S.C. § 109(c)(5)(B). With the exception of § 109(c)(2),[11] all eligibility questions "are federal questions based on, and created by, the federal Bankruptcy Code and subject to a federal rule of decision." *Stockton*, 475 B.R. at 729. Thus, the federal common law governs whether the Statement is privileged. At issue here are the work product and mediation privileges.

### a. **Work Product Privilege**

"The work product privilege operates to ensure that an opponent cannot secure materials that an adversary has prepared in anticipation of litigation." *Gundacker v. Unisys Corp.*, 151 F.3d 842, 848 (8th Cir. 1998). "The work product doctrine was designed to prevent 'unwarranted inquiries into the files and mental impressions of an attorney,' and recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 400 (8th Cir. 1987) (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).

"There are two kinds of work product—ordinary work product and opinion work product. Ordinary work product includes raw factual information." *Baker v. Gen. Motors Corp.*, 209 F.3d

---

[10] The Movants have not filed an objection to the District's eligibility, however, the Movants requested production of the Statement to determine whether the District negotiated in good faith in compliance with 11 U.S.C. § 109(c)(5)(B). *See* Motion to Compel at 2.

mediation *not otherwise discoverable* is admissible . . . or subject to discovery." Exhibit A to Motion to Compel at 1 (emphasis added).

[11] For a discussion of why § 109(c)(2) is governed by a state rule of decision, *see Stockton*, 475 B.R. at 728–29.

1051, 1054 (8th Cir. 2000). "Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories." *Id*.

### i.  Ordinary Work Product

"Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. *Id*. (citing FED. R. CIV. P. 26(b)(3)). "In order to protect work product, the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation." *PepsiCo, Inc. v. Baird, Kurtz & Dobson, LLP*, 305 F.3d 813, 817 (8th Cir. 2002).

### 1.  Anticipation of Litigation

In the Eighth Circuit, the "determination of whether the documents were prepared in anticipation of litigation is clearly a factual determination: 'The test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.'" *Simon*, 816 F.2d at 401 (quoting 8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024, at 198-99 (1970)).

In this case, the court finds the Statement was prepared in anticipation of litigation. The Statement was prepared to educate a mediator in a pre-petition mediation that took place as part of the District's negotiations with the Movants. "[I]f the party asserting protection meets its burden, the burden shifts to the party seeking the materials to show 'substantial need' and 'undue hardship.'" *Progressive Cas. Ins. Co. v. F.D.I.C.*, 49 F. Supp. 3d 545, 551 n.3 (N.D. Iowa 2014).

Thus, having found the District met its burden, the burden now shifts to the Movants to demonstrate substantial need and undue hardship.

### 2.    Substantial Need and Undue Hardship

"What 'substantial need' is depends on the facts and circumstances of the individual case, but it is certainly more than mere tangential relevance to the case. There can be no substantial need for documents or other materials that do not bear on a material fact at issue in the underlying case." *Pemberton v. Rep. Servs., Inc.*, 308 F.R.D. 195, 202–03 (E.D. Mo. 2015).

In the context of bad faith insurance litigation, "[o]ften, 'there is a substantial need for discovery of a claims file as it relates to a vexatious refusal to pay claim.'" *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, No. 4:05-cv-1934-DDN, 2012 WL 1389708, at *5 (E.D. Mo. April 23, 2012) (quoting *McConnell v. Famers Ins. Co., Inc.*, No. 07-4180-cv-c-NKL, 2008 WL 510392, at *3 (W.D. Mo. Feb. 25, 2008)). "[A]llowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action." *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996). "Pleading a vexatious refusal to pay claim, [however], does not, *ipso facto*, create a substantial need for an insurer's internal documents." *Lloyd's*, 2012 WL 1389708, at *6.

> A mere allegation of bad faith is insufficient to overcome the work product privilege. The plaintiff must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith. Of course, this required showing is not a high hurdle because the plaintiff, without seeing the documents, can only speculate as to their likely contents. He need only show the possibility, not the certainty, that the claim documents contain evidence of bad faith.

*Logan*, 96 F.3d at 977.

In *Logan*, the district court conducted an *in camera* examination of each document and concluded the documents contained no evidence of bad faith, stating that "even if totally disclosed, not a single one of these documents would support an argument of bad faith." *Id.*; *see also*, *Llyod's*, at *6 ("Where, as here, an insured raises a bad faith claim against an insurer, by an *in camera* examination of the documents the court can evaluate the possibility that the documents contain evidence of bad faith.").

The Movants argue they have made a sufficient showing of necessity. According to the Movants, "that 'showing' is straightforward: absent the Statement, there is an utter lack of any evidence to explain both what the Debtor's positions were during the Mediation and the basis for those positions. Without understanding the basis, the Movants have no ability to understand, test, or indeed challenge whether the Debtor negotiated in good faith." Reply at 6 n.5. The Movants continue, "[n]ot only is the Statement a necessity for consideration of the issue of good faith negotiation under § 109(c)(5), but it is the linchpin and indeed, the bad faith insurance cases recognize this when they hold that in bad faith litigation, such statements are not subject to the protection under the work product doctrine." *Id*. The court disagrees.

To the extent the Statement contains ordinary work product, the Movants have failed to carry their burden in demonstrating substantial need and undue hardship. A mere allegation of bad faith is not sufficient to show substantial need. *Logan*, 96 F.3d at 977. The Movants have not even alleged bad faith in this case. Moreover, the court has conducted an *in camera* review of the Statement and the court finds no evidence of bad faith, or anything else to establish substantial need or undue hardship on the Movants' part. Thus, to the extent the Statement contains ordinary work product, the Statement is privileged.

### ii.  Opinion Work Product

Pursuant to Federal Rule of Civil Procedure 26(b)(3)(B), "if the court orders discovery of [work product] materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney." This is known as opinion work product.

"It is clear that opinion work product is entitled to substantially greater protection than ordinary work product. Therefore, unlike ordinary work product, opinion work product cannot be discovered upon a showing of substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *See In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977). Instead, "opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *Id*. (citing *Hickman v. Taylor*, 329 U.S. 495 (1947)); *see also Baker v. Gen. Motors Corp*., 209 F.3d 1051, 1054 (8th Cir. 2000); *In re Chrysler Motors Corp. Overnight Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988).

In *Murphy*, the Eighth Circuit explained "[o]ur unwillingness to recognize an absolute immunity for opinion work product stems from the concern that there may be rare situations, yet unencountered by this court, where weighty considerations of public policy and a proper administration of justice would militate against the non-discovery of an attorney's mental impressions. Absent such a compelling showing, the attorney's opinion work product should remain immune from discovery." *Murphy*, 560 F.2d at 336.

One example of "rare and extraordinary circumstances" is where the opinion work product contains inculpatory evidence of the attorney's own illegal or fraudulent activities. *See*

*In re Murphy*, 560 F.2d at 336 n.19; *Baker*, 209 F.3d at 1054; *In re Chrysler Motors Corp.*, 860 F.2d at 846.

Another example of rare and extraordinary circumstances may also exist where the client engages in criminal or fraudulent behavior. *See In re Green Grand Jury Proceedings*, 492 F.3d 976, 980 (8th Cir. 2007) (recognizing a crime-fraud exception to the work product privilege and holding "a client who has used his attorney's assistance to perpetrate a crime or fraud cannot assert the work product privilege as to any documents generated in furtherance of his misconduct. We also hold that an attorney who does not knowingly participate in the client's crime or fraud may assert the work product privilege as to his opinion work product."). "With respect to the quantum of proof, before the crime-fraud exception may be applied, the moving party must make a prima facie showing that the legal advice has been obtained in furtherance of an illegal or fraudulent activity." *Id.* at 982 (quoting *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir. 1984)).

Here, to the extent the Statement contains opinion work product, the Movants have failed to carry their burden in establishing rare and extraordinary circumstances justifying production of the Statement. Moreover, after an *in camera* review of the Statement, the court finds no evidence of illegal or fraudulent conduct. Thus, to the extent the Statement contains opinion work product, the Statement is privileged.

### b.  Waiver of Work Product Privilege

The Movants argue that the Statement is not protected by the work product privilege because, in essence, 11 U.S.C. § 109(c)(5)(B) operates as a statutory waiver of any privilege that may apply. *See* Reply at 4-10. Relying on *In re City of Stockton*, 475 B.R. 720 (Bankr. E.D. Cal. 2012), the Movants argue that the District has the burden of proof in establishing its eligibility

under 11 U.S.C. § 109, and demonstration of good faith negotiation is an element of that showing.[12] Thus, the Movants allege, the District cannot carry its burden without the Statement.

In *Stockton*, the court considered the debtor's emergency motion for leave to dispense with confidentiality and introduce evidence relating to a pre-petition neutral evaluation process ("CNEP") so that it could establish the debtor's eligibility for Chapter 9 relief. In California, to be a Chapter 9 debtor, municipalities must either engage in CNEP for a specified period or its governing board must declare a fiscal emergency pursuant to specified procedures. *Stockton*, 475 B.R. at 727 (citing CAL. GOVT. CODE § 53760). If the municipality opts for the first option, all parties to the CNEP are required to maintain confidentiality and "'not disclose statements made, information disclosed, or documents prepared or produced, during the neutral evaluation process,' or during any bankruptcy proceeding except upon agreement of all parties, or for the limited purposes of determining chapter 9 eligibility under § 109(c), upon permission of the bankruptcy judge." *Id*. at 728 (quoting CAL. GOVT. CODE § 53760.3(q)). The debtor filed the emergency motion "invoking the part of the California Government Code § 53760.3(q) that authorizes a bankruptcy judge to lift the shroud of confidentiality from the pre-filing [CNEP] for the limited purpose of establishing the City's eligibility for chapter 9 relief." *Id*. at 724.

The court considered the "extent to which the California confidentiality provision applies in the context of [a] chapter 9 case and, to the extent it does not apply, how to deal with matters warranting confidentiality." *Id*. at 728. The court held that the "confidentiality provision of the California Government Code § 53760.3(q) [applies] only to the extent that [a] bankruptcy court confronts a question governed by a state rule of decision." *Id*. The court went on to reason that

---

[12] The court notes that 11 U.S.C. § 109(c)(5) may be satisfied in four different ways. In this case, it appears the District will attempt to satisfy § 109(c)(5) via subsection (B) (good faith negotiation).

with respect to § 109 eligibility requirements, only § 109(c)(2)—whether the entity is specifically authorized to file—is a question governed by a state rule of decision. The other eligibility requirements under § 109(c)—(c)(1) municipality; (c)(3) insolvent; (c)(4) desire to effect plan of adjustment; and (c)(5) creditor negotiation—are "questions based on, and created by, the federal Bankruptcy Code and subject to a federal rule of decision as to which the California confidentiality provision does not control." *Id*. at 729.

After determining the extent of confidentiality under California law for evidence related to § 109(c)(2), the court addressed confidentiality issues related to the remaining eligibility requirements under § 109(c). Addressing privileges first, the court found that the Ninth Circuit has not recognized a federal mediation privilege and the court declined to recognize one in this particular case. The court then explained that the lack of a federal mediation privilege is not the end of the analysis. The court clarified, "an objection to the proffer of any evidence in this case of statements made, information disclosed, or documents prepared or produced during the pre-filing [CNEP], either during a hearing or in motion papers and declarations, will have a sympathetic reception in the eyes of the court." *Id*. at 732.

The court issued a protective order to preserve the confidentiality in the Chapter 9 case of the "statements made, information disclosed, or documents prepared or produced during the pre-filing [CNEP]." *Id*. The court concluded that "if objections to the petition are made that place various elements of eligibility in actual dispute, then further relaxations of the protective order will be appropriate." *Id*. at 733.

Here, the Movants argue that the court in *Stockton* recognized "that if a § 109(c)(5) dispute arose, it would permit disclosure of the CNEP communications because they were not privileged." Reply at 9. This overstates the *Stockton* case.

11

First, the motion regarding disclosure of the confidential communications from the CNEP related to disclosure to the court, not production of material in a discovery dispute between parties. The debtor sought to disclose this information to the court for purposes of determining eligibility under § 109(c). It was not a motion to compel evidence from an opposing party. Second, the court did not address a § 109(c)(5) challenge and specifically how such a challenge would relate to further disclosure of confidential communications. Third, the court never addressed whether a mediation statement is subject to the work product privilege.

Finally, the court finds that 11 U.S.C. § 109 does not provide for a blanket repeal of privileged material. While the Movants are correct that the District carries the burden of establishing eligibility under § 109(c), the Statement is not the exclusive means for satisfying § 109(c)(5)(B). There is other evidence, such as the District's actions before, during, and after the mediation that may satisfy § 109(c)(5)(B). In addition, the Code provides four separate means to satisfy § 109(c)(5), none of which address repealing recognized privileges. For these reasons, this court finds that 11 U.S.C. § 109(c)(5)(B) is not a statutory waiver.

The Movants also argue that even if a privilege applies,[13] it is impliedly waived in bad faith litigation, by the sword and shield doctrine, and where material is disclosed to a third party. The court will address each waiver argument in turn.

### i. Bad Faith Litigation

The Movants cite various cases dealing with bad faith in the context of insurance litigation. The cases essentially stand for the proposition that "[t]he time-worn claims of work product and attorney-client privilege cannot be invoked to the insurance company's benefit where the only issue in the case is whether the company breached its duty of good faith in

---

[13] The Movants allege they have not taken a position on whether the Statement is work product because they lack information about the Statement to make such a concession. *See* Reply at 5-6.

processing the insured's claim." *Cedell v. Farmers Ins. Co.*, 295 P.3d 239, 245 (Wash. 2013). The Movants argue that, similar to the insurance cases cited, under § 109(c), whether the District negotiated in good faith at the mediation is a "pertinent issue" to determine if the District discharged its mandated duty of good faith.

The District responds that these cases are distinguishable. Specifically, "[i]n these settings, the things that are created by defense counsel are available to the insurer, such that 'confidentiality' and privilege does not apply to them vis-à-vis the insurer. There is contractual privity between the insured and insurer . . . [and the insurer] owes duties to its insured in a consumer setting with the third party liability claim." Objection at 8.

The court finds the bad faith insurance cases relied on by the Movants distinguishable. In these types of cases, the evidence sought provides the basis of the claim—*i.e.*, whether or not the insurance company properly processed the insured's claim. *See, e.g.*, *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir. 1992) (finding the work product privilege did not apply where "the strategy, mental impressions, and opinion of the insurer's agents concerning the handling of the claim are directly at issue"); *Henderlong v. Allstate Ins. Co.*, No. 08–cv–01377–CMA–MEH, 2009 WL 82493, at *2 (D. Colo. Jan. 13, 2009) ("The case for discoverability is much stronger when a bad faith claim is alleged and when the parties involved in the lawsuit are insured and insurer. Allowing a plaintiff to overcome an insurer's work product privilege may be particularly appropriate in an action for bad faith, in light of the insurer's virtual monopoly over the evidence required to support such an action.").

Here, on the other hand, the District's good faith is evidenced by its actions before, during, and after the mediation, such as offers and counteroffers of settlement, and bringing a representative with settlement authority. The District does not have a "virtual monopoly over the

evidence required" to establish good faith negotiation. Moreover, the Statement itself does not provide the basis of any claim or counterclaim that the Movants assert here. The Statement's purpose was to educate the mediator. The Statement did not relate to any negotiation between the District and the Movants. Thus, the court is unpersuaded that the privilege protecting the Statement is waived based on the cases cited by the Movants.

### ii.  Sword and Shield Doctrine

The sword and shield doctrine provides that "a party who raises a claim that will necessarily require proof by way of a privileged communication cannot insist that the communication is privileged." *Bradfield v. Mid-Continent Cas. Co.*, 15 F. Supp. 3d. 1253, 1257 (M.D. Fla. 2014).

In *Bradfield*, following Florida common law, the court explained that a settlement agreement "cannot be enforced against an insurance carrier if it is unreasonable in amount or tainted by bad faith." *Id*. "The party seeking to enforce the [settlement] agreement bears the initial burden of going forward with the production of evidence sufficient to make a prima facie showing of reasonableness and lack of bad faith, however the ultimate burden of proof will rest on the insurance carrier." *Id*. Thus, "under Florida law, a party who bases a claim on [a] matter which would be privileged, the proof of which will necessitate the introduction of privileged matter into evidence, and then attempts to raise the privilege so as to thwart discovery, may be deemed to have waived the privilege." *Id*. (quoting *GAB Business Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987)).

The Movants argue that by filing the Chapter 9 case, the District asserted that it negotiated in good faith prior to filing as a necessary component of its eligibility to be a debtor

14

under Chapter 9. Thus, according to the Movants, the District cannot now insist that its communications in the mediation are protected.

In response, the District argues that the sword and shield doctrine does not apply to the Statement because it does not intend to offer the Statement into evidence. The District reasons that the "import of the sword and shield doctrine in this case is that the District could not say it negotiated in good faith based on its mediation statement and not produce the mediation statement." Objection at 12. The District alleges that the Statement would not be valuable because it is the District's offers and actions at the mediation, not the Statement, that determine good faith.

In reply to the District, the Movants argue that the sword and shield doctrine is "triggered by the issues raised by a party, not by the offer of the Statement into evidence." Reply at 6. The court disagrees.

The *Bradfield* case relied on by the Movants involves a unique cause of action under Florida law that requires the plaintiff to produce evidence relating to settlement negotiations— *i.e.*, production of evidence related to the settlement negotiations is a necessary condition to a successful claim. While it is true the plaintiff triggered the sword and shield doctrine by raising a particular issue, it was a unique issue in that it could only be established by evidence that the plaintiff wished to shield from discovery. Thus, the plaintiff could not use the evidence as a sword to prove an element of his cause of action and then also shield it from discovery.

In this case, the good faith requirement under 11 U.S.C. § 109(c)(5) is not an issue that necessitates proof by the Statement. While the Statement may be sufficient,[14] it is certainly not necessary to establish good faith negotiation. There is other evidence, including the District's

---

[14] The court makes no finding regarding whether or not the Statement is sufficient to satisfy the good faith requirement under 11 U.S.C. § 109(c)(5)(B).

offers and counteroffers that establish whether the District negotiated in good faith.[15] Moreover,

the Statement is arguably not part of the mediation process as it relates to the District's

negotiations with the Movants, as the Statement's purpose was to educate the mediator. For these

reasons, the court finds that the sword and shield doctrine does not waive any privilege in this

case.

### iii.  Third-Party Disclosure

The Movants argue that the District waived its privilege when it provided the Statement

to the mediator and when it submitted the Statement to the court for an *in camera* review. *See*

Reply at 3. "Disclosure to an adversary waives the work product protection as to items actually

disclosed, even where disclosure occurs in settlement." *In re Chrysler Motors Corp. Overnight*

*Evaluation Program Litig.*, 860 F.2d 844, 846 (8th Cir. 1988) (quoting *Grumman Aerospace*

*Corp. v. Titanium Metals Corp. of America*, 91 F.R.D. 84, 90 (E.D.N.Y.1981)).

> If documents otherwise protected by the work-product rule have
> been disclosed to others with an actual intention that an opposing
> party may see the documents, the party who made the disclosure
> should not subsequently be able to claim protection for the
> documents as work product. But disclosure of some documents
> does not destroy work product protection for other documents of
> the same character.

*Pittman v. Frazer*, 129 F.3d 983, 988 (8th Cir. 1997) (quoting 8 C. WRIGHT & A. MILLER,

FEDERAL PRACTICE AND PROCEDURE § 2024, at 198-99). "[B]road concepts of subject matter

waiver analogous to those applicable to claims of attorney-client privilege are inappropriate

when applied to Rule 26(b)(3)." *Id.* (quoting *Dunlap Corp. v. Deering Milliken, Inc.*, 540 F.2d

1215, 1222 (4th Cir. 1976)).

---

[15] To the extent the District later attempts to use the Statement to establish good faith
negotiation—as a sword—the District may not continue to shield the Statement.

Mere disclosure to a third party does not waive the work product privilege. *See Ayers Oil Co. v. American Bus. Brokers, Inc.*, No. 2:09-cv-02-DDN, 2009 WL 4725297, at \*3 (E.D. Mo. 2009) ("Although disclosure by a client to a third party may waive the attorney-client privilege, such disclosure should not suffice in itself for waiver of the work product privilege. . . . While disclosure of work-product to adversaries has generally resulted in waiver of the privilege, disclosure to nonadversary third parties does not carry the same result."); *see also United States v. Am. Tel. and Tel. Co*., 642 F.2d 1285, 1299 (D.C.Cir.1980).

> There are some cases that suggest that any disclosure of a document to a third person waives the work–product immunity to which it would otherwise be entitled. Decisions to this effect confuse the work–product immunity with the attorney–client privilege. The attorney–client privilege has its basis in the confidential nature of the communication and the reason for the privilege ordinarily ceases to exist if confidentiality is destroyed by voluntary disclosure to a third person. But the purpose of the work–product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials.
>
> Thus, the result should be that disclosure of a document to third persons does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information. Most cases have so held and have found no waiver from disclosure.

8 C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024.

In this case, the District did not waive its work product privilege when it provided the Statement to the mediator. The court finds that the District did not disclose the Statement with actual intent that the Movants see the Statement. *Pittman*, 129 F.3d at 988. This is bolstered by the fact that before providing the Statement to the mediator, the District signed the Mediation Letter that provided "Mediators cannot be subpoenaed or otherwise compelled to disclose any matter revealed in the process of conducting a mediation." Exhibit A to Objection. Moreover,

mere disclosure to a third party—here, the mediator—does not waive the work product privilege. *Ayers*, 2009 WL 4725297, at \*3.

With respect to the *in camera* review, the court is similarly persuaded that the District did not waive its privilege. Courts routinely conduct *in camera* reviews of evidence for various reasons. For example, where a party seeks production of work product material, a court may conduct an *in camera* review to determine whether the moving party has made a sufficient showing of undue hardship and necessity. *See, e.g.*, *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 977 (7th Cir. 1996); *Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co.*, No. 4:05-cv-1934-DDN, 2012 WL 1389708, at \*6 (E.D. Mo. April 23, 2012). In these instances, it would be absurd for the court to conduct such a review where doing so would waive the privilege protecting the evidence being sought in the first place. Thus, the court finds that the District did not waive its privilege by submitting the Statement to the court for an *in camera* review.

### c.  Mediation Privilege

The District also argues that the Statement is protected by a mediation privilege.[16] The Eighth Circuit has not addressed the merits of recognizing a federal common law settlement privilege. *See Gov't of Ghana v. ProEnergy Servs. LLC.*, 677 F.3d 340, 344 n.3 (8th Cir. 2012). Of the Circuits that have addressed the issue, only the Sixth Circuit has adopted a settlement privilege. *See Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976 (6th Cir. 2003). The Seventh Circuit and Federal Circuit have declined to adopt the privilege. *See In re MSTG, Inc.*, 675 F.3d 1337, 1342–48 (Fed. Cir. 2012); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1124 n.20 (7th Cir. 1979).

---

[16] Mediation privilege and settlement privilege are used interchangeably.

Federal Rule of Evidence 501 authorizes federal courts to determine new privileges by examining "common law principles . . . in the light of reason and experience." *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996). In *Jaffee*, the Supreme Court laid out factors to consider in determining whether to recognize a new privilege. The four factors are: "(1) whether the asserted privilege is 'rooted in the imperative need for confidence and trust'; (2) whether the privilege would serve public ends; (3) whether the evidentiary detriment caused by an exercise of the privilege is modest; and (4) whether denial of the federal privilege would frustrate a parallel privilege adopted by the states." *Sheldone v. Pennsylvania Tpk. Comm'n*, 104 F. Supp. 2d 511, 513 (W.D. Pa. 2000) (citing *Jaffee*, 518 U.S. at 9-13)).

The District argues that "several federal courts have recognized a federal mediation privilege rooted in Rule 408 of the Federal Rules of Evidence."[17] Objection at 13. The District relies on *Lake Utopia Paper Ltd. v. Connelly Containers, Inc.*, 608 F.2d 928 (2d Cir. 1979); *Sheldone v. Pa. Tpk. Comm'n*, 104 F. Supp. 2d 511, 515 (W.D. Pa. 2000); *Folb v. Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164 (C.D. Cal. 1998); and *In re RDM Sports Grp., Inc.*, 277 B.R. 415, 430 (Bankr. N.D. Ga. 2002) for this proposition.

In *Lake Utopia*, the Second Circuit considered an appeal from a district court judgment confirming an arbitration award. In the appellee's brief on appeal, the appellee divulged the opinion of Staff Counsel for the Civil Appeals Management Plan during a pre-argument conference. *Lake Utopia*, 608 F.2d at 929. The pre-argument conference is conducted for the

---

[17] It appears the District has confused Rule 408 with Rule 501, as it relates to the cases relied on. *See, e.g.*, *Folb v Motion Picture Indus. Pension & Health Plans*, 16 F. Supp. 2d 1164, 1171 (C.D. Cal. 1998) ("Rule 408 only protects disputants from disclosure of information to the trier of fact, not from discovery by a third party. Consequently, without a federal mediation privilege under Rule 501, information exchanged in a confidential mediation, like any other information, is subject to the liberal discovery rules of the Federal Rules of Civil Procedure, at least where jurisdiction is premised on a federal question and the material sought in discovery is relevant to the federal claims presented.").

purpose of settlement and the opinion of Staff Counsel is confidential. The Second Circuit, in

dicta, took issue with the appellee for including this information in the appellee's brief. *Id*. at 930

(noting that it "committed a serious breach of the confidentiality essential to the purposes of pre-

argument conferences").

The courts in *Folb*, *Sheldone*, and *RDM* all adopted a federal mediation privilege. In

*Sheldone* and *RDM* in particular, the courts found that the Supreme Court's *Jaffee* factors for

recognizing a new privilege were satisfied.

Relying on *Carman v. McDonnell Douglas Corp*., 114 F.3d 790 (8th Cir. 1997), the

Movants argue that the Eighth Circuit has not adopted a federal settlement privilege and newly

formed federal privileges are not favored. In *Carman*, the Eighth Circuit declined to adopt an

"ombudsman[18] privilege" and noted that "evidentiary privileges are not lightly created." *Id*. at

793–94 (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974) (internal quotations omitted)).

"A party that seeks the creation of a new evidentiary privilege must overcome the significant

burden of establishing that 'permitting a refusal to testify or excluding relevant evidence has a

public good transcending the normally predominant principle of utilizing all rational means for

ascertaining truth.'" *Id*. at 793 (quoting *Trammel v. United States*, 445 U.S. 40, 50 (1980)).

In declining to recognize an ombudsman privilege, the court reasoned, in part, that the

defendant "failed to make a compelling argument that most of the advantages afforded by the

ombudsman method would be lost without the privilege." *Id*. The Eighth Circuit went on to

explain:

> Even without a privilege, corporate ombudsmen still have much to
> offer employees in the way of confidentiality, for they are still able
> to promise to keep employee communications confidential from

---

[18] The term "ombudsman" referred to an employee outside of the corporate chain of command
whose job it was to investigate and mediate workplace disputes.

> management. Indeed, when an aggrieved employee or an employee-witness is deciding whether or not to confide in a company ombudsman, his greatest concern is not likely to be that the statement will someday be revealed in civil discovery. More likely, the employee will fear that the ombudsman is biased in favor of the company, and that the ombudsman will tell management everything that the employee says. The denial of an ombudsman privilege will not affect the ombudsman's ability to convince an employee that the ombudsman is neutral, and creation of an ombudsman privilege will not help alleviate the fear that she is not.

*Id*. at 793-94.

In this case, neither the District nor the Movants address the factors for recognizing a new federal mediation privilege. While *Carman* may be distinguishable, the case provides guidance for recognizing a new privilege in general. For example, the Eighth Circuit's reluctance to adopt a new privilege because it found the plaintiff failed to overcome the significant burden of creating a new privilege is persuasive. Here, the District has failed to address the Supreme Court's factors for recognizing a new privilege. The District has also failed to produce evidence to support why those factors are satisfied in this case. Thus, the court finds that the District has failed to "overcome the significant burden of establishing" a new privilege. *Carman*, 114 F.3d at 793. The court declines to adopt a new mediation privilege under the facts of this case.

### III.    CONCLUSION

The court is satisfied that the District has carried its burden in establishing that the Statement is protected by the work product privilege. The court finds that the Movants have failed to carry their burden in showing substantial need and undue hardship to the extent the Statement contains ordinary work product. The court similarly finds that the Movants have failed to carry their burden in establishing rare and extraordinary circumstances to the extent the Statement contains opinion work product. Moreover, after an *in camera* review of the Statement,

the court finds no evidence justifying substantial need and undue hardship, nor rare and extraordinary circumstances. To the extent, however, the District later attempts to use the Statement to prove good faith negotiation pursuant to 11 U.S.C. § 109(c)(5)(B)—or for some other purpose—the Movants may renew their Motion to Compel production of the Statement. For these reasons, the Motion to Compel is DENIED without prejudice. The Movants are granted an additional 14 days from the date of this opinion to file an objection to the Debtor's eligibility.

        IT IS SO ORDERED.


Dated: <u>December 19, 2016</u>        <u>   /s/ Cynthia A. Norton       </u>
                                      JUDGE CYNTHIA A. NORTON
                                      United States Chief Bankruptcy Judge